United States District Court
Southern District of Texas
FILED

AUG 3 0 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, * | |
| Plaintiff, * | |
| v. * | CIVIL NO. B-04-152 |
| * | |
| ONE PIECE OF REAL PROPERTY * | |
| LOCATED IN CAMERON COUNTY, * | |
| TEXAS, Defendant. * | |

**COMPLAINT FOR FORFEITURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, Plaintiff in the above entitled and numbered cause, by and through its United States Attorney for the Southern District of Texas and its Assistant United States Attorney assigned to this matter, and files this Complaint for Forfeiture against one piece of real property, its fixtures, appurtenances, attachments, and improvements, located in Cameron County, Texas, further described in Attachment 1, which description is incorporated herein by reference as if set out at length, hereinafter referred to as "the Defendant Property."

I.

Jurisdiction is conferred upon this Court by Title 28, United States Code, §§ 1345 and 1355.

II.

This Court is a proper venue for this action pursuant to Title 28, United States Code, § 1395.

III.

The Defendant Property will be served and brought into the Court's jurisdiction by the posting of a Notice of Forfeiture Action on that property advising all potential Claimants to appear and make any Claim and Answer they have to the Complaint for Forfeiture.

IV.

The Defendant Property is proceeds traceable to the exchange of an illegal controlled substance and is subject to forfeiture to the United States of America by Title 21, United States Code, § 881(a)(6).

The Defendant Property was purchased to conceal the nature or the ownership of proceeds of the exchange of an illegal controlled substance and is subject to forfeiture to the United States of America under Title 18, United States Code, § 981(a)(1)(A).

The Defendant Property was used and/or intended to be used to facilitate a drug trafficking offense or offenses and is subject to forfeiture under Title 21, United States Code, §§ 881(a)(6),(7).

V.

In support of the assertions set out in paragraph IV. above, Plaintiff would respectfully refer the Court to the affidavit of Special Agent Dennis Sherman attached hereto as Attachment 2, which is incorporated herein by reference as if set out at length.

VI.

The Defendant Property have an approximate value of $83,000.00.

VII.

The filing of a judicial action is necessitated by Title 19, United States Code, §§ 1608 and 1610, due to the nature of the Defendant Property.

VIII.

By reason of all of the foregoing, the Defendant Property is subject to forfeiture to the United States of America.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for all of the following:

1. That monition issue according to the normal procedure of the Court citing all persons having an interest in the Defendant Property to appear on the return day of said process and make such Claim and Answer as they may have;

2. That Judgement of Forfeiture be entered against the Defendant Property;

3. That, after the entry of a Judgment of Forfeiture against the Defendant Property, that an Order issue for the seizure and detention of the Defendant Property;

4. That the United States recover the costs of this action, including costs of seizure; and

5. That the United States be granted such further relief to which it may be entitled.

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

_____
Allan Hoffmann
Assistant U. S. Attorney
Attorney-in-Charge
Texas Bar No. 09778700
Southern District No. 6042
United States Attorney's Office
1701 W. Business 83, Suite 600
McAllen, Texas 78501
(956) 630-3173

That parcel of land, together with its buildings, improvements, fixtures, attachments, and accretions described as follows:

Lot Twelve 5, Block 205, containing 23.29 acres, more or less, El Jardin Resubdivision, Espiritu Santo Grant in Cameron County, Texas, according to the Map of said Subdivision recorded in Volume 4, page 48, Map Records of Cameron County, Texas;

Being that property described in the Special Cash Warranty Deed filed in Volume 4923, Page 128, of the Deed Records of Cameron County;

Subject to any restrictions, reservations, rights of way, or easements of record as of August 15, 1991, if any.

Attachment 1

COUNTY OF BEXAR                         *
                                        *
STATE OF TEXAS                          *

I, Dennis S. Sherman, being duly sworn, depose and state:

1. I am a Senior Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement, formerly the Department of the Treasury, United States Customs Service, and have worked as Customs Law Enforcement Officer since March 1983. I am currently assigned to the San Antonio, Asset Identification and Forfeiture Group [AIRG] and have been so assigned since May 1999. As a Special Agent with the Bureau of Immigration and Customs Enforcement and the U. S. Customs Service, I have investigated or been involved in the investigation of violations of Title 19, Title 18 and Title 21 United States Code pertaining to the smuggling of merchandise and narcotics into the United States and associated money laundering offenses. I have been the AIRG case agent on numerous cases involving properties used to facilitate illegal activities to include the smuggling of controlled substances.

2. Based upon my training, experience, and participation in investigations involving violations of Title 18 and Title 21 of the United States Code, I know the following to be true.

  A. Illegal transactions in controlled substances are almost always conducted with United States currency. United States currency is used to pay for illegal controlled substances both because of its readily identifiable value and because of the difficulty in tracing cash transactions. Large quantities of Untied States currency

1

Attachment 2

are generated from the illegal sale of controlled substances. Large quantities of United States currency are needed and used to buy illegal controled substances in bulk quantites. As a result, large quantities of Untied States currency are a "tool of the trade" of illegal drug trafficking. Legal transactions in large sums of money are typically conducted by check or wire-transfer. This is because of the effort involved in gathering, counting, moving, and storing large quantities of currency, and because of the greater risk of loss from robbery or theft in large cash transactions. As a result, the presence of a large quantity of United States currency is a strong indicator of drug trafficking activity.

B.  Individuals who engage in large scale illegal trafficking acquire large quantities of United States currency from that activity which they convert into real estate, businesses, jewelry, automobiles, airplanes, and other assets to benefit from their illegal activity, to attempt to legitimize their wealth, and to attempt to conceal the illegal source of their income. Assets purchased with drug proceeds, including vehicles and real estate, are frequently placed in the names of family members and other trusted individuals. This is done both to distance the owner from any drug trafficking activity facilitated by those assets and to attempt to keep them from detection and/or seizure by members of law enforcement.

2

C. Persons who engage in large scale drug trafficking tend not to have any lawful employment both because their drug trafficking activities require their full attention and because of the relatively small sums of money they can make from lawful employment compared to the money they make from drug trafficking. Businesses owned by persons who engage in drug trafficking tend to be used as centers for explaining wealth made from drug trafficking and not as centers to generate a lawful income. This is because individuals who engage in drug trafficking tend to not have the expertise needed to manage a business in such a fashion as to generate lawful income and/or tend not to be willing to expend the effort which is needed to generate a lawful profit from a legitimate business.

D. Persons engaged in large scale drug trafficking often use their properties, including homes, businesses, and ranch land, as places in which to conduct their drug trafficking activities. This is because, as places which under their control, persons not involved in their illegal activities - most especially members of law enforcement - can be kept away and their illegal activities can be conducted in greater secrecy and security in those places.

3. The facts set out below, which are based upon my personal knowledge and upon information I have received from other members of law enforcement, establish probable cause to believe that a real property located in Cameron County, Texas, being that parcel of

3

land, together with its buildings, improvements, fixtures, attachments, and accretions described as follows:

> Lot 5 Block 205 El Jardin Subdivision containing 23.39 acres, more or less, El Jardin Resubdivision, Espiritu Santo Grant in Cameron County, Texas, according to the Map of said Subdivision recorded in Volume 4, page 48, Map Records of Cameron County, Texas,

hereinafter referred to as "the Defendant Property" was used or was intended to be used to facilitate violations of 21 United States Code §§ 881(a), 846, 952(a), and/or 963 and is subject to forfeiture by 21 U.S.C. § 881(a)(7).

4. On July 3, 1995, the Brownsville Police Department executed a search warrant at the Defendant Property. Discovered and seized there was 818 pounds of marijuana concealed in electric transformers.

5. On August 28, 2001, the Customs Office of Enforcment, Brownsville, Texas, received information from a confidential source that the Defendant Property was being utilized to store large quantities of smuggled narcotics. Agents surveilled the ranch, identified several vehicles, and then obtained and executed a search warrant on the Defendant Property. During the execution of the search warrant, approximately 3.62 kilograms of marijuana was seized and Bulmaro Barron was arrested. Bulmaro Barron has been arrested and convicted on drug charges on three previous occassions. On July 21, 1984, Bulmaro Barron was arrested by the Cameron County Sheriff's Office for possession and delivery of marijuana. He was convicted and sentenced to five years probation. On August 5, 1997, the Brownsville Police Department arrested Bulmaro Barron for possession of more than five pounds but less than fifty pounds of marijuana. He was convicted and sentenced to eight years in prison and 8 years probation. On September 16, 1997, the Drug Enforcment Administration arrested Barron for conspiracy possession with intent to distribute 91 kilograms of

4

marijuana. Barron was convicted and sentenced to three years in prison.

6. On September 19, 2001, Mario Barron (the adult son of Bulmaro Barron) granted Customs Agents consent to search the ranch located at the Defendant Property, Brownsville, Texas. During this search Special Agent Victor Hugas and Raul Garcia discovered a large fiberglass tank that had been buried under the ground. Mario Barron told agents that the tank had been placed in the ground by his father, Bulmaro Barron, to store narcotics.

7. Bulmaro Barron was sentenced to prison on May 6, 1998, for his arrest on August 5, 1997, by the Brownsville Police. On May 18, 1998, Barron transferred ownership of the Defendant Property to Javier and Marina Barron who live in San Jose, California. Your affiant believes that this was done to try and prevent the forfeiture of his property.

8. On October 25, 2001, and October 29, 2001, Marina Barron and Javier Barron were interviewed concerning the Defendant Property. Marina Barron stated her brother, Bulmaro Barron had been the owner of the Defendant Property since approximately 1990. Marina Barron stated that Bulmaro Barron's wife, Josephina Barron, contacted her telephonically and advised her that Bulmaro Barron had been arrested. Bulmaro Barron, Josephina Barron, Marina Barron and Javier Barron agreed that the Defendant Property would be transferred to Marina Barron and Javier Barron.

9. Marina Barron stated that they received the Deed for the Defendant Property in the mail in San Jose, California. Marina Barron stated that she and Javier Barron had taken the Deed to a notary public in San Jose, California to legally finalize the transfer of the property. Marina Barron stated that she mailed the Deed back to Josephina Barron and/or Bulmaro Barron in Brownsville,

5

Texas. Marina Barron stated that she and Javier Barron did not purchase the Brownsville ranch; the property was transferred to their names without any money changing hands. Marina Barron and Javier Barron stated they never had an interest in the property. Marina Barron stated that Josephina Barron and Bulmaro Barron always had total control of the Defendant Property and that they (Marina Barron and Javier Barron) had never been to the Defendant Property. Marina Barron added that, although she and Javier Barron had the Defendant Property in their names, Josephna and Bulmaro Barron were the ones who truly owned it. Agents asked Barron why she accepted the transfer of the Defendant Property if she had no interest or control over it. Marina Barron stated that it was Josephina Barron or Bulmaro Barron's idea to transfer the Defendant Property to her and Javier Barron. Marina Barron stated that she wanted to help Josephina Barron and Bulmaro Barron because they were family members.

10. The facts set out above show probable cause to believe that the Defendant Property was used or intended to be used to facilitate violation of 21 United States Code 881(a), and/or 963 and is subject to forfeiture by 21U.S.C. 881(a)(7).

FURTHER AFFIANT SAYETH NOT

*[signature]*
Dennis S. Sherman
Senior Special Agent
Bureau of Immigration and Customs Enforcement

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 12th day of June, 2003.

6

_Janet M Carlisle_
Signature

[Seal: JANET M. CARLISLE / MY COMMISSION EXPIRES / OCTOBER 29, 2005]

_Janet M. Carlisle_
Printed Name
Notary Public, State of Texas
My Commission Expires: 10-29-2005

7